■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HENRY P. VINSON, Appellant.—Appeal from a judgment of the County Court of Albany County, rendered November 8, 1973, upon a verdict convicting defendant of the crime of robbery in the first degree. On June 26, 1972, between 8:30 and 9:00 P.M., Michael Lounello was walking along a road in Lincoln Park in the City of Albany when an automobile was driven up behind him. Its driver called him over and asked if he had or knew where marijuana could be obtained. Lounello observed five or six people in the car and recognized one of the passengers. He responded in the negative and, as he turned away, saw this same passenger standing two or three feet behind him. At this point Lounello heard a report, discovered he had been shot and, when he attempted to move, fell to the ground. His assailant bent over him, relieved him of about $30 in cash, and reentered the automobile which then sped away. The police arrived and Lounello was removed to a hospital for treatment of his wounds. At that time he supplied a physical description of the robber, but did not inform the police of the fact that he had recognized

his assailant, though unaware of his name, having previously seen him playing basketball in the park on other occasions. In the course of their investigation, the police obtained a sworn statement from one Keith Furlong, an eyewitness, positively naming one Billy Graham as Lounello's attacker. However, when Graham was apprehended, Furlong was unable to make a positive identification of him, being unsure because of Graham's observed height, the color of his hair and the fact that Furlong had been some 45 feet away from him at the time of the incident. In August, 1972 Lounello was informed by some friends that the name of the man who shot him was Henry Vinson. This information was relayed to the police who subsequently came to the home of Lounello with 8 to 10 photographs, including one of Henry Vinson, and asked him whether he could make any identification from those photographs. There is no evidence that any of the names of those depicted was imparted to Lounello by the police before he made his selection of defendant's photograph. Subsequent to Vinson's indictment, a hearing was held and the trial court refused to suppress the identification evidence. The defendant interposed an alibi defense at trial. On this appeal following conviction he raises issues concerning (1) the identification procedure, (2) the failure to provide him with the evidence obtained from Furlong, and (3) the prosecutorial conduct in presenting medical evidence of the victim's injuries and in commenting thereon. Since he had furnished the name of Vinson to the police, Lounello undoubtedly expected to find a photograph of a man by that name, if one was available, among the group of pictures presented to him. However, this does not mean that the identification process was tainted or in any way contaminated, provided, as the record here reveals, that the police engaged in no suggestive device leading him to select any particular photograph. Furthermore, it is apparent that Lounello possessed an independent basis for his identification of the defendant owing to his observations of him at the time of the robbery as well as from prior sightings. Thus, he was certainly competent to identify the defendant as his attacker at the trial and such testimony was properly admitted into evidence. Of course, it is well settled in New York that a complaining witness cannot testify as to his prior identification of a defendant by means of a photograph (People v Griffin, 29 NY2d 91; People v Christman, 23 NY2d 429; People v Wright, 21 NY2d 1011; People v Cioffi, 1 NY2d 70). However, no violation of that standard occurred during this trial as Lounello's direct examination relating to identification proceeded within proper bounds and without objection. The first reference to any photographic technique of identification was developed by questions asked of him on cross examination. No objection was thereafter made when the witness amplified this matter during redirect examination. In fact, though offered by the prosecution, the photographs used by the police were produced and identified as part of the defendant's case and were admitted into evidence, after appropriate redaction, without objection. As to the duty of the prosecution to furnish the Furlong account to the defense, it appears from the record that it was during the defendant's case, and in the testimony of an investigating officer, that Keith Furlong's identification of another was first made known. However, from the very nature of that inquiry, it is obvious that the defense knew of Furlong's statement and his later retreat therefrom. Exactly when or how this information became available to the defense is not clear, but it cannot be said that the duty imposed on the prosecution by Brady v Maryland (373 US 83) to disclose exculpatory material in its control was here transgressed for there is no duty to make a complete and detailed disclosure of all results of the police investigation of a particular

crime, particularly when mistaken information is believed to have been obtained *(People v Stridiron,* 33 NY 287, 292). In any event, all of this information was available to the defendant in time for him to pursue such avenues of inquiry as he deemed advisable and the record provides no basis for believing that his case was in any way prejudiced by prosecutorial inaction. It would be mere speculation to say another chosen course would have produced a different result. On the issue of the presentation of medical evidence of the victim's injuries, we note that such proof is an essential element of robbery in the first degree (Penal Law, § 160.15, subd 1), and that the comments made on this and other subjects by the prosecutor simply do not reach that level of impropriety which would deprive the defendant a fair trial and require reversal. Judgment affirmed. Greenblott, J. P., Kane, Main, Larkin and Reynolds, JJ., concur.